Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9389 | **DATE** | 2/25/2004 |
| **CASE TITLE** | Loeffel Steel Products vs. Delta Brands, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Motion of Defendants Delta Brands, Inc. and Samuel Savariego for Partial Summary Judgment [ #37; amended as #40] is hereby denied. AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 6 2004 | 62 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/25/2004 | |
| PT/AeAy | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice PT mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Loeffel Steel Products, Inc., )
)
Plaintiff, )
)
v. )
)
Delta Brands, Inc. d/b/a/ DBI; )
Samuel F. Savariego, ) No. 01 C 9389
)
Defendants. ) Magistrate Judge
) Arlander Keys
)
)
Delta Brands, Inc., )
)
Counter-Plaintiff, )
)
v. )
)
Loeffel Steel Products, Inc., )
)
Counter-Defendant. )
)
Delta Brands, Inc. )
and Samuel Savariego, )
)
Third-Party )
Plaintiffs, )
)
v. )
)
Industrial Magnetics, Inc., )
)
Third-Party )
Defendant. )

**MEMORANDUM OPINION AND ORDER**

In this diversity action arising out of the sale of industrial

1

machinery, Defendants, Delta Brands, Inc. and Samuel Savariego (collectively "DBI"), move this Court for partial Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, DBI's motion is denied.

BACKGROUND FACTS

Plaintiff, Loeffel Steel Products ("Loeffel"), processes steel and delivers finished product to various equipment manufacturers. In late 1999, Loeffel began looking for a new piece of equipment. Acting on Loeffel's interest, a DBI salesperson, Gautam Mahtani, contacted Loeffel in January of 2000 touting their new product, a multi-blanking line.

Purchase negotiations subsequently began and various representations were made. The parties' recollections of these representations sharply diverge. For instance, DBI claims that Loeffel represented that its primary business was processing prime steel and that Loeffel only intended to run quality product on the new line. Loeffel denies this, and says that DBI was aware that Loffel also processed secondary steel. Loeffel also contends that DBI represented that the new line would not require separator disks in the stacker area and would have automatic blade gap adjustment.

Further, Loeffel claims that DBI made additional

---

[1] Third-Party Defendant, Industrial Magnetics, Inc., has also filed a Motion for Partial Summary Judgment, which the Court will address in a separate order.

representations during an escorted trip to an Indiana warehouse to view an existing DBI line. According to Loeffel, DBI promised that Loeffel's line would be designed so that it could be installed at floor-level. Additionally, Loeffel claims that DBI repeated the assurance that the line would not require separators.

After Loeffel confirmed its interest in DBI's product, the parties exchanged draft sales contracts. On or about March 1, 2000, the parties executed the final revision (the "Contract"). The Contract contains an Annex A (the "Annex"), which attaches a series of correspondence which were incorporated into the Contract by reference. DBI contends that the Annex contains a provision disclaiming DBI's responsibly for consequential damages. Loeffel disagrees with DBI's interpretation, and claims that the parties intended to limit the consequential damages waiver only to issues arising out of the installation of the equipment. Beyond the Contract's terms, the parties made certain contemporaneous oral agreements. One such agreement regarded the line's installation, which Loeffel claims DBI estimated would cost $70,000.

After contracting, the parties discovered that Loeffel's plant lacked the electrical capacity to maintain DBI's equipment, and Loeffel was, therefore, forced to incur additional, uncontemplated costs to increase the plant's on-site energy intake. The parties disagree over who is to blame for this oversight. DBI maintains that Loeffel's plant manager made the

decision that the plant could handle the new line, whereas Loeffel places blame on DBI's inaccurate representations that Loeffel's plant had sufficient electrical capacity for the incoming DBI equipment.

The next problem involved the new line's installation. DBI complains that Loeffel delayed shipment, and then hired a third-party installer whose work caused significant problems. Again, Loeffel deflects blame and faults DBI's failure to test the machine and improper installation instructions. Also, Loeffel claims that, during his escorted trip to Indiana, DBI assured Loeffel that his line would be designed so that it could be installed at floor-level, but delivered prints calling for a below-ground installation.

Once installed, operational problems arose, and the parties blame each other for the ensuing difficulties. Among its complaints, Loeffel cites continuous problems with the line's stacker, even when processing "pristine" coils.[2] Additionally, Loeffel complains that the line's leveler did not perform to its represented range and created unsatisfactory products. Further, Loeffel cites problems with the line's slitting unit, in that it lacks the represented tooling and/or software program. Finally,

---

[2] DBI does admit problems with the line's stacker, but blames a third-party component manufacturer, Industrial Magnetics, Inc., for supplying defective magnets. As a result, Industrial Magnetics has been brought into this suit as a third-party defendant.

4

Loeffel claims that the new line required separators in the multi-blanking mode, which is directly contrary to DBI's explicit representations. While DBI does not specifically refute each of Loeffel's complaints, it claims that the line will meet production expectations, so long as Loeffel runs commercial quality steel through the machine.

Faced with continuing operational difficulties, Loeffel initiated the present action. Loeffel's complaint fashions five counts against DBI, including breach of contract (Count I), breach of express warranty (Count II), breach of implied warranty of merchantability (Count III), breach of implied warranty of fitness for a particular purpose (Count IV), and fraud (Count V)[3]. Following written discovery, DBI now moves for summary judgment on Count V. DBI claims that Loeffel has not produced evidence to sustain its fraud claim and that summary judgment is, therefore, appropriate. DBI further moves the Court to reject Loeffel's prayer for consequential damages because, it claims, the Contract specifically relieves DBI from liability for such damages.

## STANDARD OF REVIEW

The Court will grant summary judgment only if the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to a judgment

---

[3] The fraud count is also brought against Mr. Savariego individually.

as a matter of law. Fed.R.Civ.P. 56(c) (2003). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Shank v. William R. Hauge, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

The moving party in a motion for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party's burden is met, then the nonmoving party must set forth specific facts showing that there is a genuine issue for trial in order to survive summary judgment. *Schacht v. Wisconsin Dep't of Corrs.*, 175 F.3d 497, 504 (7th Cir. 1999). In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

### DISCUSSION

1. *Fraud*

DBI claims that Loeffel cannot support its fraud claim for two reasons. First, DBI contends that Loeffel has not produced competent evidence to prove the claim's elements, specifically

6

that DBI made any knowing material misrepresentations, and that Loeffel reasonably relied on such representations. Second, DBI asserts that the *Moorman* doctrine bars Loeffel's tort-based fraud claim because this lawsuit is a contract dispute.

1. Lack of Evidence

To prove fraud, Loeffel must establish: 1) a false statement of material fact; 2) known or believed to be false by the person making it; 3) an intent to induce the other party to act; 4) action by the other party in reliance on the truth of the statement; and 5) damage to the other party resulting from such reliance. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003).

Loeffel sufficiently presents evidence supporting the allegation that DBI made a number of material misrepresentations of fact when selling the new line. For instance, deposition testimony suggests that DBI represented that the new line would not require separators for multi-blanking when stacking blanks, when, in fact, the machine as delivered required such separators. Such representations, in the form of promised specifications, are more than mere expressions of opinion. *Peters v. Murphy-Knight*, 618 N.E.2d 459, 463-64 (Ill. App. 1993) (distinguishing between statement of fact and expression of opinion or mere "puffing"); see also *Walter Raczynski Prod. Design v. IBM Corp.*, No. 92 C 6423, 1993 WL 282722 *4,5 (N.D.Ill. July, 21, 1993)(statements

7

representing abilities of a product to perform certain functions can form the basis of a viable fraud claim). Rather, they become actionable misrepresentations if not followed through. *See id.* Further, deposition testimony suggests that DBI knew that they could not deliver such a product when negotiating with Loeffel or was unaware as to whether such a technological feat could be accomplished. If proven true[4], this type of evidence could go towards sustaining Loeffel's burden of proving the claim's first two elements.

Regarding the claim's final three elements, intent to induce reliance, actual reliance, and damages, the Court finds that Loeffel has also produced sufficient evidence to overcome summary judgment. Certainly, specific representations regarding the technological capabilities of a touted product are meant to induce the buyer's reliance. Lastly, evidence supporting the final two elements, actual reliance and damages, is established by Mr. Loeffel's testimony that DBI's representations prompted the purchase. And evidence of damages is provided by Mr. Loeffel's testimony that he received a product of less value than the product he bargained for. Thus, the Court finds that Loeffel has presented adequate evidence to at least raise a dispute of material fact as to whether DBI fraudulently induced Loeffel into

---

[4]/The Court must stress that it expresses no opinion on the veracity of these allegations at this stage of the proceedings.

8

purchasing their equipment. Accordingly, DBI's first argument for summary judgment is without merit.[5]

2.  *Moorman* Doctrine

Next, DBI claims that the *Moorman* doctrine bars Loeffel's fraud claim, which sounds in tort. Illinois' well-established *Moorman* doctrine provides that a plaintiff that has not sustained personal injury or property damage has a claim for contract damages but cannot bring an action in tort. *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443, 449 (1982). Of particular relevance here, the *Moorman* doctrine denies tort recovery for product defects when the loss is rooted in disappointed contractual or commercial expectations. *Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001). But the doctrine is not without exception. A claim alleging fraudulent or intentional misrepresentation falls within an exception to the Moorman rule. *See Rankow v. First Chicago Corp.*, 870 F.2d 356, 362 (7th Cir. 1989). As discussed above, Loeffel has presented sufficient evidence to at least raise a dispute of material fact regarding whether DBI fraudulently misrepresented its product's capabilities. Accordingly, if

---

[5]/While the Court has focused on Loeffel's evidence regarding the line's separator in denying DBI's motion, the Court also acknowledges that Loeffel has also presented evidence of other knowing misrepresentations, including the price of the line's installation, the design for installation, the line's electrical requirement, and various allegations regarding the line's leveler and slitter.

9

Loeffel establishes fraud, the *Moorman* doctrine would not present an obstacle to recovery. As such, DBI's second argument for summary judgment must also fail.

2. *Consequential Damages*

Loeffel's complaint seeks recovery for consequential damages suffered as a result of their alleged disappointed commercial expectations. Such damages would conceivably include lost profits resulting from disrupted production. DBI contends that the Contract specifically excludes consequential damages should problems with their machinery arise. In support, DBI cites a provision contained in the Annex, which states "DBI is not responsible for consequential damages." DBI claims that this disclaimer applies to all controversies relating to Contract performance. Loeffel disputes DBI's broad application and argues that, when viewed in proper context, it is clear that the consequential damages waiver is meant to only apply to a specific aspect of Contract performance, namely installation. While the Court does not wish to express an opinion favoring one position over the other, it should be noted that Loeffel has presented some evidence indicating that DBI's broad interpretation is erroneous.

The UCC, which governs this commercial transaction, allows parties to limit remedies, including consequential damages, but requires that any such limitation must be "expressly agreed to be exclusive." *See* UCC § 2-719(1)(b), 810 ILCS 5/2-719(1). After a

10

plain reading of the Contract and the accompanying Annex, the Court cannot conclude that the parties expressly agreed to limit Loeffel's remedies in the manner that DBI advocates. For instance, the limitation does not appear in the Contract's main body, nor does it take on any special prominence in the Annex. Moreover, as Loeffel highlights, a careful analysis of the chronological context in which this limitation originated, and the text surrounding the disclaimer, seems to indicate that DBI's interpretation indeed goes too far. Based on these observations, the Court denies DBI's request to find that the Contract unequivocally excludes recovery for consequential damages.

In sum, the testimony and supporting documentary evidence reveals that the parties are sharply at odds regarding the content and intent behind DBI's representations throughout the transaction and, further, have irreconcilable interpretations regarding the scope of the Contract's consequential damages waiver. Because numerous disputes of material fact exist, the Court must deny DBI's motion for summary judgment.

## CONCLUSION

IT IS THEREFORE ORDERED that DBI's Motion for Partial Summary Judgment be, and the same hereby is, DENIED in its entirety.

DATED: February 25, 2004    ENTER:

*Arlander Keys*
ARLANDER KEYS
United Stats Magistrate Judge