IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LOEFFEL STEEL PRODUCTS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | No. 01 C 9389 |
| ) | Magistrate Judge Jeffrey Cole |
| **DELTA BRANDS, INC., d/b/a DBI; and** ) | |
| **SAMUEL F. SAVARIEGO, individually,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Loeffel Steel Products, Inc. ("Loeffel"), has moved to reinstate the lawsuit it filed against Delta Brands Inc. ("Delta") a dozen years ago on December 7, 2001, and to allow it to amend its complaint to add a count for breach of contract for non-compliance with the settlement agreement. Delta opposes the motion, arguing it comes far too late, and the court no longer has jurisdiction over this matter.

### INTRODUCTION AND BACKGROUND

"Defer no time, delays have dangerous ends."
Henry VI, Part I, Act III, sc. ii 1.33[1]

More than thirteen years ago, Loeffel purchased a sheet steel cutting and stacking machine – called a rotary shear multi-blanking line – from Delta Brands Inc. ("Delta"). Delta had made some impressive claims about the speed and accuracy of the machine. Loeffel would contend those claims were extravagant and exaggerated. The machine was installed at Loeffel's facility in August

---

[1] The Seventh Circuit is partial to Twelfth Night. *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 775 (7th Cir.1995)("'In delays there lies no plenty.'"). The point, of course, is the same.

1

2000. It never worked properly. Engineers worked on the machine on a continuous basis, dealing with a variety of mechanical, electrical, and software problems. Finally, Loeffel had had enough and filed suit on December 1, 2001.[2]

The parties spent the next five years in litigation. At one point, at the parties' invitation, the court observed the machine in operation at Loeffel's plant. On that day at least, Delta's highly touted rotary shear multi-blanking line performed rather badly, and the test had to be stopped.[3] Litigation continued until finally the parties reached a settlement. It called for Delta to make a substantial payment to Loeffel in monthly installments over a period of sixteen months, from April 2006 to July 2007. Delta also had to design, build, and install a host of modifications to the machine in order to get it working up to specifications set forth in the settlement agreement. (Dkt. # 180, Ex. B, ¶¶ 1,2; Ex. A). The period in which work had to be completed was about 9½ months, with an additional 21 days of run time before final testing of the modified machine. (Dkt. # 180, Ex. B, ¶¶ 1,2; Ex. A, III-C(1), (2); V). The failure to complete the modifications would be a default, and Loeffel would then be allowed to reinstate its suit against Delta if the default was not cured within thirty days. (Dkt. # 180, Ex. B, ¶ 3(b)). Once Delta made its first installment payment on April 20, 2006, the parties would seek a dismissal order from the court. (Dkt. # 180, Ex. B, ¶ 4(a)).

The following order was entered on April 27, 2006:

> The parties report that the case is settled subject to various contingencies. At the request of the parties, the case is dismissed without prejudice with leave to reinstate within one year of the draft order to follow. The settlement agreement is incorporated

---

[2] The facts surrounding the case may be found at *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 372 F.Supp.2d 1104 (N.D.Ill.2005); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 379 F.Supp.2d 968 (N.D.Ill.2005); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.* 387 F.Supp.2d 794 (N.D.Ill.2005).

[3] There was at the time of the test some vague charge by the defendants that Loeffel perhaps had rigged the test by using steel of a heavier gauge than called for. But that allegation went nowhere.

herein by reference and the parties shall abide by their respective obligations. The court shall retain jurisdiction to enforce the settlement agreement.

(Dkt. #166).[4]

The parties' draft order titled Order of Dismissal was entered a week later on May 3rd. It echoed the earlier order, again incorporated the terms of the settlement agreement by reference, and effectively started the one year clock:

> The Court has been apprised that the parties have executed a Settlement Agreement, the terms of which are incorporated in this Order by reference. The above captioned case is thus dismissed without prejudice, and the Court shall retain jurisdiction to enforce the terms of the Settlement Agreement. (Dkt. #169).

If Loeffel's version of events is to be credited, it was painfully apparent early on in the one year period that things were not going well. Thousands of dollars and hundreds of hours were being sunk into the rotary shear multi-blanking line without improvement. Loeffel had a punch list of problems that needed to be addressed, and Delta was not reimbursing it for the costs as it had promised. About a year and a half after the parties executed their settlement agreement, Loeffel had had enough – again. Its counsel informed Delta by letter on October 9, 2007, that:

> [Loeffel's] frustration has reached a critical juncture. He is asking me to prepare the matter to reinstate the proceedings. I have counseled him that this should be our last resort, and that we should try to see if the parties can come to a final conclusion on the testing and remediation efforts by [Delta]. . . . I believe we are at the end of our rope . . .

(Dkt. # 180, Ex. F). Counsel demanded a meeting within 21 days and demanded reimbursement

---

[4] This order, which incorporated the confidential settlement agreement by reference and required the parties to "abide" by its terms was not sufficient as a form of injunction under Rule 65(d), since "every order granting an injunction ... shall be specific in terms; shall describe in reasonable detail, *and not by reference to* the complaint *or other document,* the act or acts sought to be restrained." *Blue Cross and Blue Shield Ass'n v. American Express Co.,* 467 F.3d 634, 636 - 637 (7th Cir.2006)(emphasis added). The incorporation by reference is not, however, without significance. *See infra* at 8.

within 7 days. (Dkt. # 180, Ex. F). Apparently, that meeting resulted in Loeffel allowing Delta more time to make the promised modifications. (Dkt. # 180, at 5).

Seven months later, Loeffel was still at the end of its rope. Counsel's May 20, 2007 letter repeated his previous one and raised additional concerns:

> We are reaching a point in the relationship between our clients which is critical that your client be proactive and do exactly what it has promised to do over time or my client (who has already insisted that I do so) triggers the litigation to ensue again and set the matter for trial. . . . while your client makes some efforts towards completing the changes on the line . . . every time we try to get to point of finality and schedule the remaining items on the punchlist to be completed so we can set a test date, he appears to vanish. My client has written numerous emails and copied on them and to date the matter has not been concluded. We do not have firm dates and a schedule from your client for that punchlist and thereafter a date out to do the testing, thus I will be forced to male a motion with the court to reinstate the litigation.

(Dkt. # 180, Ex. G). Counsel demanded Delta contact Loeffel with a schedule and reimburse Loeffel $34,000 in expenses by May 31, 2008. (Dkt. # 180, Ex. G). Delta somehow mollified Loeffel once again. On November 3, 2009, another letter from Loeffel's counsel listed specific punchlist items that had been a problem for over three years. Stunningly, the modifications at issue were specifically set forth and described in the April 2006 settlement agreement. (Dkt. # 180, Ex. E).

But, as Loeffel argues, this pattern continued, unabated, for the next five years. (Dkt. # 180, at 6). On October 7, 2010, Loeffel's counsel sent Delta yet another letter "[i]n an attempt to avoid additional litigation between the parties." (Dkt. # 180, Ex. D). He noted that there was still a punchlist of items to be completed. It was not as if there were unforeseen problems developing with the machine as time went on and work was done. Again, Loeffel complained that the modifications promised in the 2006 settlement agreement had not been made. (Dkt. # 180, Ex. D). So, in well over four years, Delta had not even been able to fix the specific problems the settlement agreement was designed to address. And expenses continued to mount and go unreimbursed. Loeffel states

4

that this letter served as its default notice to Delta. It closed:

> [Loeffel] hereby demands the above-mentioned modifications and/or services to the line be completed on or before October 30, 2010. We would like to schedule a test run of the line, pursuant to . . . the Settlement Agreement, for the week of November 8, 2010. Please let me know your availability for that week and we can schedule the test. If we do not hear from you and the modification are not completed by October 30, the testing will still occur by November 8, 2010, and undoubtedly it will fail the specifications and we have been instructed to file the suit per the terms of the Settlement Agreement by November 19, 2010.

(Dkt. # 180, Ex. D). Despite having provided Delta with a notice of default pursuant to the terms of the settlement agreement, after the 30 day cure period had passed, Loeffel *still* did not reinstate its case.

Delta went out of business some time in 2011 and has since reorganized as Delta Steel Technologies. http://www.deltasteeltech.com/MainPage.html. Loeffel asserts that it was not informed of this until March of 2013. (Dkt. # 180, Ex. H). Only then, upon learning of Delta's demise, did Loeffel move to reinstate its lawsuit. According to Loeffel, this was when it became clear – not before – that Delta was not going to complete the promised modifications. Even then, Loeffel still waited another five months before attempting to bring legal action, filing its six-paragraph motion on August 7, 2013. (Dkt. # 171). In short, it was only after more than seven years had passed following the dismissal of the case, and six years after the first signs that Delta was not going to be able to get its machine up to specifications and, incredibly, nearly three years after it gave Delta notice that it was in default on the settlement agreement, that Loeffel took action to reinstate its 2001 lawsuit.

## ANALYSIS

In *Kokkonen v. Guardian Life Insurance Co.,* 511 U.S. 375, 380–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Supreme Court established that a district court does not have jurisdiction

5

to enforce a settlement agreement merely because the court's dismissal of the suit was premised upon that agreement. 511 U.S. at 380-82. Thus, when a suit is dismissed *with prejudice,* it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction. *Balshe LLC v. Ross,* 441 Fed.Appx. 395, 396 (7th Cir. 2011). *See also Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir.2007); *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir.2006); *Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 489 (7th Cir. 2002). But, if the judgment explicitly incorporates the settlement, or reserves authority to enforce the settlement, the court possesses ancillary jurisdiction to enforce that settlement. *Kokkonen*, 511 U.S. at 381–82. But that jurisdiction is not eternal; where a district court dismisses a settled suit without prejudice, it may expressly retain ancillary jurisdiction for "a time-limited motion to enforce the settlement." *White v. Adams*, 2009 WL 773877, *1 (7th Cir. 2009). That's exactly what happened here. The court dismissed Loeffel's suit without prejudice, and retained jurisdiction to enforce the settlement agreement. The period in which it retained jurisdiction was defined as one year by the prior order entered in connection with these proceedings and in contemplation of the settlement agreement.

Loeffel argues that *White* does not apply because "there was never a limitation on the time frame for the Court to retain jurisdiction to reinstate." (*Plaintiff's Supplemental Brief*, at 5). But Loeffel's motion – and its reply brief – completely ignore the explicit language of the order, which dismissed the case without prejudice with leave to reinstate *within one year* of the draft order to follow. (Dkt. # 166)(emphasis supplied). The obvious and intended purpose of the order was to give the parties one year to take action if Delta had not made good on its promise in the settlement agreement to repair the machine. That this was the understanding of the parties is apparent when one looks at the dates for performance in the settlement agreement, which was just under a year.

6

Accordingly, May 3, 2007, the outside date for reinstatement, has long since passed. (Dkt. #166, 169). While Loeffel has ignored this order, "[p]laying ostrich to avoid compliance with . . . court orders" can neither eliminate or vary their obligations. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992). *Cf., Gonzalez-Servin v. Ford Motor Co.,* 662 F.3d 931, 934 (7th Cir.2011)("'The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless.'").

Loeffel also contends that the timing of its motion is "reasonable under the unique circumstances of the settlement agreement." (*Plaintiff's Supplemental Brief*, at 5). Loeffel is unclear as to what those circumstances are, other than the fact that it made repeated demands on Delta to comply with the settlement agreement over a period of years. But it is precisely the fact that Loeffel made repeated demands, all futile, over the course of seven years, but took no action to resurrect the case that makes its conduct and its delay utterly "unreasonable." Perhaps, Delta's assurances gulled Loeffel into holstering its motion to reinstate on one or two occasions. But, as Loeffel concedes, Delta's assurances continued unabated for six years. Reliance under such circumstances, even if it were relevant to this case, was plainly unreasonable as a matter of law. Where circumstances are so suspicious as to suggest to a reasonably prudent person that representations made by another may be false, reliance on those representations is not reasonable. *Travelers Cas. and Sur. Co. of America v. Ernst & Young LLP,* 542 F.3d 475, 483 (5th Cir.2008); *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir1997); *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1042 (7th Cir.1990); Restatement (Second) of Torts § 541 (1977) ("The recipient of a fraudulent misrepresentation is not justified in relying on its truth if...its falsity is obvious to him.").

To this may be added Loeffel's awareness that Delta went out of business in 2011 and that it learned of this in 2013. What was Loeffel doing in the interim? Did it allow two years to pass without contact from Delta? Did it assume that Delta's principle had simply "vanished" as he had on previous occasions? And why, when Loeffel finally learned that Delta was no more – which Loeffel claims was the final straw – did Loeffel wait *five months* to file its uncomplicated, 2 page, six paragraph motion to reinstate.[5] Whatever else may be said, Loeffel has not acted reasonably or with expedition. The parties involved in this litigation were sophisticated businessmen, represented by skilled counsel. Loeffel is thus bound by its decision, with all its attendant consequences. *See Crowe ex rel. Crowe v. Zeigler Coal Co.,* 646 F.3d 435, 444 (7th Cir.2011); *Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd,* 476 F.3d 421 (7th Cir.2007); *Lynch,* 279 F.3d at 490–492.

The settlement agreement did not contemplate an unending *pas-de-deux.* Rather, it explicitly envisioned and allowed for modification and final testing of the machine in a period 10 months and a few days, plus 30 days to cure any default. That left 30 days for Loeffel to bring the matter back to court and still fit within the one year period specified in the April 27th order. It would have made no sense for the parties to have agreed in the settlement agreement, the terms of which incorporated by reference in the April 27th order and in the May 3rd order submitted by the parties, to a one-year period for Delta to make the machine work properly, while at the same time agreeing to an indefinite period in which Loeffel could come back to court if it didn't. Contractual language is to be interpreted in light of common sense, *US Airways, Inc. v. McCutchen,* \_U.S.\_, 133 S.Ct. 1537, 1548 (2013); *Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells,* 213 F.3d 398, 402 (7th Cir. 2000); *McElroy v. B.F. Goodrich Co.,* 73 F.3d 722, 726 -727 (7th Cir.1996), and in a way that

---

[5] The motion was not only short, it cited not a single case. (#171). It was only after the court, *sua sponte,* ordered additional briefing (#179) that Loeffel made any attempt to address the issues in the case.

avoids producing absurd or senseless results. *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 860 (7th Cir.2002). Loeffel's argument –which ignores the one year time limit in the April 27th order – violates both of these basic interpretive principles.

A federal court is a court of limited jurisdiction, *Kokkonen*, 511 U.S. at 377, and jurisdiction does not exist in perpetuity. Contrary to Loeffel's contentions (*Plaintiff's Supplemental Brief*, at 6), a settlement agreement cannot dictate when that jurisdiction must be exercised or that it must be retained forever. *Brass Smith, LLC, v. RPI Indus., Inc.,* 827 F.Supp.2d 377, 380 (D.N.J. 2011); *Child Evangelism Fellowship of Minnesota v. Minneapolis Special School Dist. No. 1*, 2013 WL 951405, *2 (D.Minn. 2013). The parties may not have included a limitation on the retention of jurisdiction in their settlement agreement, but that is understandable. The agreement was a private contractual matter and thus incapable of conferring continuing jurisdiction on the court following the dismissal of the case. *Shapo v. Engle,* 463 F.3d 641, 645 (7th Cir.2006). That was the function of the April 27, 2006 order – an order that the defendants never claimed was in error.

Even if that order had not imposed a one-year time limit on the exercise of jurisdiction, jurisdiction may not be retained indefinitely to enforce a settlement agreement – at least not the kind involved here. The Seventh Circuit certainly said so in *White*, where it required the retention of jurisdiction be "time-limited." And earlier, in *McCall–Bey v. Franzen,* 777 F.2d 1178 (7th Cir. 1985)(Posner, J.), the court indicated its disapproval of virtually open-ended retentions of jurisdiction in routine cases:

> In this case, the petition to enforce [the settlement agreement] came only a few months after the dismissal; but as the plaintiff's able counsel candidly admitted at argument, the principle for which he is contending has no limit of time. If 20 years from now the plaintiff complains that the defendants have violated a term of the settlement agreement, the judge would, in the plaintiff's view, have jurisdiction to entertain the complaint—and this regardless of whether the district judge intended

9

to retain jurisdiction.[6] No statute confers such a jurisdiction and we hesitate to use so formless a concept as inherent power to give the federal courts an indefinite jurisdiction over disputes in which the federal interest may be nonexistent. If the parties want the district judge to retain jurisdiction they had better persuade him to do so.

*Id.* at 1187. *See also Brass Smith*, 827 F.Supp.2d at 382-83.

In *Franzen*, unlike here, the district court had not retained jurisdiction, as Judge Posner noted. But as in *Franzen*, "the principle for which [Loeffel] is contending has no limit of time." Its argument would be the same had it waited even longer than it did to file its motion to reopen the case. Yet, as already discussed, nothing in this case required or permitted an extended or open-ended period of retained jurisdiction.[7] Given the parties' lengthy experience with the machine, a year was time enough to know whether it would be fixed as required by the settlement agreement. And, notwithstanding Loeffel's *ipse dixit* to the contrary, that is exactly what happened; the parties knew within a year – just as the settlement agreement contemplated.– that had defaulted under the settlement agreement, which had a precise schedule for the completion of modifications. In fact, the settlement agreement explicitly stated that modifications not in accord with the schedule and requirements in Exhibit A to the agreement would constitute a Default, thereby permitting reinstatement of the case. (*See* Paragraph 3b. of the Agreement, Exhibit B to Plaintiff's Supplemental Brief). Loeffel cannot, six years after Delta was supposed to have fixed the machine

---

[6] Another of Judge Posner's examples involved a suit brought ten years after the case was dismissed. 777 F.2d at 1187.

[7] *Compare*, *Tomczak v. City of Chicago.* 765 F.2d 633, 635 (7th Cir.1985)("The district court retained jurisdiction of the case to enable the parties to enforce compliance with the [*Shakman*] decree and to resolve a number of still-disputed issues"), citing *Shakman v. Democratic Organization of Cook County,* 481 F.Supp. 1315, 1359 (N.D. Ill.1979), where jurisdiction was retained "[t]o enable the parties to this [Consent] Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Judgment, for the enforcement of compliance with the provisions contained herein, and for the punishment of the violation of any of such provisions."

insist that it is entitled to start afresh. Loeffel's delays were unreasonable.

This does not leave Loeffel without a remedy. It can, if it chooses, file a new suit based on the claimed breach of the settlement agreement in state court or in federal court, if there is diversity of citizenship. *White,* 2009 WL 773877, *1; *Franzen*, 777 F.2d at 1188. Nothing in this Opinion is intended to express any opinion on the merits of that suit.

## CONCLUSION

In varying contexts, the Seventh Circuit has emphasized the importance of adherence to deadlines: "We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir.2006). And we are cautioned that "[i]gnoring deadlines [especially jurisdictional ones] is the surest way to lose a case. ... 'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.'" *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994). Loeffel's motion to reopen the case and to grant it leave to amend to add a count for breach of contract for non-compliance with the settlement agreement, [Dkt.# # 171,180 at 6] is DENIED.

*/s/ Jeffrey Cole*

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 12/2/13